# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

Case No. 1:24-CV-953

| | |
|---|---|
| ANGELIQUE HARRINGTON,<br><br>  Plaintiff,<br><br>  v.<br><br>NEW ASPEN PROPERTY<br>MANAGEMENT, LLC d/b/a GVA<br>PROPERTY MANAGEMENT,<br><br>  Defendant. | DEFENDANT'S MEMORANDUM OF<br>LAW IN SUPPORT OF ITS MOTION<br>TO DISMISS PLAINTIFF'S AMENDED<br>COMPLAINT FOR FAILURE TO<br>STATE A CLAIM<br><br>Fed. R. Civ. P. 12(b)(6) |

Defendant New Aspen Property Management, LLC d/b/a GVA Property Management, LLC ("New Aspen"), hereby provides this Memorandum of Law in support of its Motion to Dismiss Plaintiff Angelique Harrington's ("Harrington") Amended Complaint [DE 15] for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of its Motion, New Aspen states the following:

## I. NATURE OF THE CASE

This is an employment law case brought by former employee Harrington against New Aspen for alleged disability discrimination (disparate treatment and failure to accommodate) and retaliation under the ADA, and wrongful discharge in violation of public policy, as expressed by the North Carolina Equal Employment Practices Act ("NCEEPA"). The Court should dismiss the Amended Complaint with prejudice because Plaintiff's ADA claims are not timely, and constructive discharge is not a cognizable claim

1

under the NCEEPA—which allows only for a wrongful termination claim if there is an actual discharge.

II. **FACTUAL SUMMARY**

This case began as a state court action in Orange County Superior Court, when the Plaintiff filed her Complaint ("State Court Complaint") on September 23, 2024. [DE 1-2]. Plaintiff's State Court Complaint asserted claims against New Aspen for alleged violations of the North Carolina Persons with Disabilities Protection Act ("PDPA") and for wrongful termination in violation of the public policy of North Carolina, as expressed in the North Carolina Equal Employment Practices Act ("NCEEPA"). [DE 1-2]. Plaintiff's State Court Complaint contained no federal law claims. [DE 1-2].

New Aspen removed the case to this Court based on diversity jurisdiction on November 18, 2024. [DE 1]. Shortly thereafter, New Aspen moved to dismiss Harrington's State Court Complaint for Failure to State a Claim pursuant to Fed. R. Civ. Pro. 12(b)(6) on December 23, 2024. [DE 9]. The grounds for New Aspen's Rule 12(b)(6) motion against the State Court Complaint were two-fold. First, employment discrimination claims under the PDPA must be brought within 180 days of when plaintiff discovered "the alleged discriminatory practice or prohibited conduct." N.C. Gen. Stat. § 168A-12. Because the State Court Complaint was filed in 2024 when Plaintiff discovered the alleged discrimination in the Fall of 2022, Plaintiff's PDPA claim was time-barred. Second, North Carolina Courts do not recognize in the NCEEPA claims for unlawful termination in violation of public policy where the alleged termination is constructive, as opposed to actual. *See Gallimore v. Newman Machine Co., Inc.*, 301 F. Supp. 2d 431, 453–54

2

(M.D.N.C. 2004) ("because the North Carolina courts have declined to recognize a public policy exception to the employment-at-will doctrine for constructive, as opposed to actual, discharges, this Court declines to do so as well") (internal citations omitted).

In response to New Aspen's Motion to Dismiss the State Court Complaint, Harrington filed the Amended Complaint on February 3, 2025. [DE 15]. Her Amended Complaint alleges similar facts, but abandons her PDPA claim, choosing instead to bring claims for discrimination under the ADA. [DE 15, ¶¶ 45-61-]. Harrington's theories of disability discrimination in the Amended Complaint are disparate treatment and failure to accommodate. *Id.* She also alleges New Aspen retaliated against her for engaging in protected activity, namely disclosing to New Aspen her disability and requesting a reasonable accommodation. *Id*. at ¶ 48. Harrington also renews her claim for wrongful termination in violation of public policy pursuant to the NCEEPA. *Id*. at ¶¶ 62-74.

The factual allegations underlying her claims are that Harrington, as Property Manager for the New Aspen multi-family housing property where she worked, was diagnosed with intracranial hypertension on or about September 19, 2022, and instructed by her emergency room physician not to work until September 28, 2022, which instruction she provided to New Aspen. *Id.* at ¶¶ 24-29. Harrington further contends that her return-to-work instructions changed on September 21, 2022, when her primary care provider instructed her that she was allowed to work so long as the work was part time and remote. *Id*. at ¶ 30. Harrington contends she also shared this instruction with New Aspen, and it resulted in New Aspen demoting her from Property Manager to Assistant Property Manager, effective October 14, 2022. *Id*. at ¶ 31.

Harrington alleges that New Aspen denied her requests to work remotely and for personal leave. *Id*. at ¶¶ 32-36. She further alleges that when she attempted to return to work on September 28, 2022, as instructed by her emergency room physician, New Aspen sent her home and said she could not work until she had a doctor's note releasing her back to work. *Id*. at 37. Harrington goes on to allege that she provided an updated doctor's note from her primary care provider releasing her to work but prohibiting her from driving to New Aspen on September 29, 2022. *Id*. ¶ 39.

She contends that the next day, New Aspen accelerated her demotion to Assistant Property Manager from taking effect on October 14, 2022, to take effect immediately, and that on October 3, 2022, New Aspen re-assigned her to work at a different multi-family housing property managed by New Aspen, located in Raleigh some thirty miles away from the property where Harrington lived and worked. *Id* at ¶¶ 40-42. Finally, she asserts she provided yet another doctor's note to New Aspen reiterating her doctor's instruction that she cannot drive, but that New Aspen never responded. *Id*. at ¶¶ 42-44. She concludes that New Aspen "effectively fired" Harrington by its "failure to respond" to her "numerous attempts to contact them" and that the partial day she worked on September 28, 2022, was her "last day working for" New Aspen. *Id* at ¶ 44.

Harrington's Amended Complaint filed on February 3, 2025, is the first complaint filed in federal court, and the first complaint that seeks relief under any federal statute. This, despite her contention that the EEOC issued her a right to sue on June 24, 2024, based on a charge she filed on or about March 17, 2023. *Id.* at ¶¶ 12-13.

4

III. **QUESTIONS PRESENTED**

This case presents two questions. First, is the Amended Complaint timely under 42 U.S.C. § 2000e-5(f)(1), incorporated by reference for disability discrimination and retaliation claims under the ADA at 42 U.S.C. § 12117(a); and second, does the Amended Complaint state a claim for relief of wrongful termination in violation of North Carolina public policy as it is expressed in the NCEEPA at N.C. Gen. Stat. § 143-422.2. Defendant respectfully submits the answer to both questions is "no."

IV. **ARGUMENT**

A. **Standard of Review**

At the motion to dismiss stage, the Court's job is to "test the sufficiency of the complaint," by accepting the factual allegations in the Amended Complaint as true for purposes of the motion, but the legal conclusions in the Amended Complaint need not be accepted by the Court. *See e.g.*, *Dolgaleva v. Virginia Beach City Public Schools*, 364 Fed. App'x 820 (table) (4th Cir. 2010).

New Aspen denies all of Plaintiff's allegations; however, even assuming all of the factual allegations in the Amended Complaint are true, Plaintiff still cannot sustain a claim under the ADA or NCEEPA.

B. **Plaintiff's Amended Complaint is Not Timely Filed**

A civil action by an aggrieved party alleging claims for disability discrimination or retaliation under the ADA must be filed within 90 days of a right to sue notice being issued by the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1). While not jurisdictional in nature, the 90-day deadline for filing a civil action after issuance of a right to sue notice is akin to a

statute of limitations defense that can be raised at the motion to dismiss stage. *See Stewart v. Johnson*, 125 F. Supp. 554, 559 (M.D.N.C. 2015). Where the failure to comply with the statute of limitations "appears clearly on the face of the Complaint . . . the burden is on the plaintiff to demonstrate [her] suit is timely. "*Id*. Indeed, this Court has dismissed civil rights claims pursuant to Fed. R. Civ. P. 12(b)(6) on this basis. *See Alexander v. City of Greensboro*, 2011 WL 13857 (M.D.N.C. 2011). (dismissing plaintiff's amended complaint when it was filed around one year after receiving the EEOC right to sue letter).

Here, Plaintiff contends the EEOC issued the right to sue letter on June 24, 2024. [DE 15, ¶ 13]. However, she did not file the Amended Complaint, or any complaint with this Court or a complaint that seeks relief under the ADA or any federal law at all, until February 3, 2025. There are 224 days between when the EEOC issued Plaintiff her right to sue notice and when she filed the Amended Complaint. Nothing in the Amended Complaint explains why she waited seven-and-a-half months to assert claims under the ADA when she had only a mere three. Thus, based on the naked allegation in the Amended Complaint, her ADA claims are untimely.

While Plaintiff asserts in a conclusory fashion that "all conditions precedent to the institution of this lawsuit have been fulfilled" this is the type of legal conclusion the Court need not take Plaintiff's word for. Plaintiff's own allegations in the Amended Complaint reveal she waited almost eight months after receiving a right to sue before filing any claim under the ADA, with no explanation as to why she took so long. Thus, the "condition precedent" that she file her ADA claims within 90 days of receiving the right-to-sue notice

6

Case 1:24-cv-00953-TDS-LPA    Document 18    Filed 03/19/25    Page 6 of 11

from the EEOC have not been met. Given this, the burden is on Plaintiff to show her ADA claims are timely. *Id.*

### C. **Plaintiff's Claim for Constructive Discharge Under the North Carolina Equal Employment Practices Act is Improper**

Plaintiff's Amended Complaint, while tweaking some of the language in her NCEEPA claim, still alleges the termination by New Aspen is constructive in nature. For example, in her State Court Complaint, she stated New Aspen violated the NCEEPA when it "(4) constructively discharged her by ceasing all communications and never allowing her to return to work, with or without accommodation." [DE 1-2, ¶ 46]. In her Amended Complaint, she alleges New Aspen took adverse employment actions against Harrington when it "Ceased communicating with Ms. Harrington when she attempted to return to work <u>effectively</u> firing her." [DE 15, ¶ 70] (emphasis added). Harrington also alleges New Aspen violated the NCEEPA by "(4) firing her by ceasing all communications and never allowing her to return to work, with or without accommodation." [DE 15, ¶73]. Merely removing the word "constructive" from her Amended Complaint does not convert a constructive discharge claim into a claim for actual discharge.

Nor are the other alleged violations of public policy as expressed in the NCEEPA viable claims. As explained in New Aspen's Motion to Dismiss Harrington's State Court Complaint, claims under the NCEEPA are limited to allow only for a wrongful discharge state law tort claim. *See e.g., Strickland v. Jewell*, 562 F. Supp. 661, 674–75 (M.D.N.C. 2007) ("Because the NCEEPA does not create a private right of action, it is <u>only applicable</u> to

7

common law wrongful discharge claims or in connection with other specific statutory remedies.") (emphasis added) (citing *Mullis v. Mechanics & Farmers Bank*, 994 F. Supp. 680, 687 (M.D.N.C. 1997) and *Hughes v. Bedsole*, 48 F.3d 1376, 1383 n.6 (4th Cir. 1995) (internal quotations omitted)).

Again, Courts in this District have also expressly held that claims for constructive discharge, as opposed to actual discharge, are not viable wrongful discharge claims under the NCEEPA. *See Gallimore*, 301 F. Supp.2d at 453-54 ("because the North Carolina courts have declined to recognize a public policy exception to the employment-at-will doctrine for constructive, as opposed to actual, discharges, this Court Declines to do so as well") (internal citations omitted).

Further, the NCEEPA does not require employers to reasonably accommodate employees' disabilities or allow employees to bring harassment claims. *See Head v. Adams Farm Living, Inc.*, 242 N.C. App. 546, 553–554, 775 S.E.2d 904, 909–910 (2015) (stating the NCEEPA does not impose a duty of reasonable accommodation on employers); *Arbia v. Owens-Illinois, Inc.*, 2003 WL 21297330, *9 (M.D.N.C. 2003) (stating that NCEEPA does not include cause of action for harassment). As this Court made clear in *Strickland*, the only type of employment discrimination claims for which the NCEEPA can serve as the basis is a wrongful termination claim. *Strickland*, 562 F. Supp. at 674–75. Failure to accommodate or participate in the interactive process, and adverse employment actions short of discharge are simply not cognizable under the NCEEPA. *See id*.

8

Case 1:24-cv-00953-TDS-LPA   Document 18   Filed 03/19/25   Page 8 of 11

## V. **CONCLUSION**

For the reasons stated in New Aspen's Motion to Dismiss Plaintiff's Amended Complaint and this Memorandum, Harrington's Amended Complaint should be dismissed with prejudice.

This the 19th day of March, 2025

        **GORDON REES SCULLY MANSUKHANI, LLP**

        */s/ Kelly A. Brewer*
        Kelly A. Brewer
        N.C. Bar No. 42707
        kbrewer@grsm.com
        Benjamin L. Williams
        N.C. Bar No. 53665
        blwilliams@grsm.com
        150 Fayetteville St. Suite 1120
        Raleigh, NC 27601
        T: (919) 787-4555
        *Attorneys for New Aspen*

9

Case 1:24-cv-00953-TDS-LPA   Document 18   Filed 03/19/25   Page 9 of 11

## CERTIFICATE OF COMPLIANCE BY COUNSEL

The undersigned counsel hereby certifies that this Memorandum complies with the length requirements in Local Rule 7.3(d).

Counsel further certifies that prior to filing New Aspen's Motion to Dismiss the Amended Complaint, counsel met and conferred with Plaintiff's counsel as required by the Court's February 12, 2025, Order and discussed whether any deficiencies could be cured by an Amended Complaint.

This the 19th day of March, 2025

**GORDON REES SCULLY MANSUKHANI, LLP**

*/s/ Kelly A. Brewer*
Kelly A. Brewer
N.C. Bar No. 42707
kbrewer@grsm.com
Benjamin L. Williams
N.C. Bar No. 53665
blwilliams@grsm.com
150 Fayetteville St. Suite 1120
Raleigh, NC 27601
T: (919) 787-4555
*Attorneys for New Aspen*

## CERTIFICATE OF SERVICE

I certify that I caused a copy of the foregoing Memorandum of Law in Support of New Aspen's Motion to Dismiss to be electronically filed using the CM/ECF system, which will cause a copy to be served on all counsel of record.

This the 19th Day of March, 2025

> **GORDON REES SCULLY MANSUKHANI, LLP**
>
> */s/ Kelly A. Brewer*
> Kelly A. Brewer
> N.C. Bar No. 42707
> kbrewer@grsm.com
> Benjamin L. Williams
> N.C. Bar No. 53665
> blwilliams@grsm.com
> 150 Fayetteville St. Suite 1120
> Raleigh, NC 27601
> T: (919) 787-4555
> *Attorneys for New Aspen*